_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
_____

## 2014-1286
_____

### KYLE RE,
**on behalf of himself and all others similarly situated,**
**Plaintiff-Appellant,**

**v.**

### UNITED STATES,
**Defendant-Appellee.**
_____

**Appeal from the United States District Court for the Northern District of California in Case No. 13-CV-03518, Judge William H. Alsup**
_____

## BRIEF FOR DEFENDANT-APPELLEE

**STUART F. DELERY**
**Assistant Attorney General**

**J. CHRISTOPHER KOHN**
**Director**

**RUTH A. HARVEY**
**Assistant Director**

**ALICIA M. HUNT**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Room 10018**
**1100 L Street, N.W.**
**Washington, D.C. 20005**
**(202) 307-3548**
**Attorneys for Defendant-Appellee**

**May 22, 2014**

# <u>TABLE OF CONTENTS</u>

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE..............................................................3

    I.     Nature of the Case .....................................................................3

    II.    Statement of Facts and Course of Proceedings Below .............3

SUMMARY OF THE ARGUMENT ....................................................6

ARGUMENT ......................................................................................7

    I.    No Authority Exists for an Award of Interest on Re's Refund from the Exchange ................................................................................7

        A.     The No-Interest Rule Bars an Award of Interest Against the United States Unless a Statue Explicitly Waives Sovereign Immunity....................................................8

        B.     Re's Credit Agreement with the Exchange Does Not Provide for Interest on a Refund from the Exchange. ...............9

        C.     Section 6611(a)'s Requirement that the IRS Pay Interest on Delayed Tax Refunds Does Not Apply. ...........................10

            1.    Re's Claim Is Not for a Refund of Tax.............................10

            2.    Section 6402(g) of Title 26 Precludes a Claim for an Improper Administrative Offset from Being Considered a Claim for a Tax Refund ..............................12

    II.    Even if the Court Determines that Re Has a Claim for Interest (Which He Does Not), This Court Should Not Reach Re's Post-Judgment Theory Regarding Order of Payments Applied to Debt Because Re Waived It. ........................................................19

CONCLUSION ........................................................................................ 21

<u>**TABLE OF AUTHORITIES**</u>

## CASES

*Amoco Production Co. v. Fry*, 118 F.3d 812 (D.C. Cir. 1997) ...............................12

*Astrue v. Ratliff*, 560 U.S. 586 (2010) ...................................................12

*Blanton v. Anzalone*, 813 F.2d 1574 (9th Cir. 1987).............................................20

*Briggs v. United States*, 07-5760 WHA, 2009 WL 1176297
   (N.D. Cal. April 30, 2009) ...................................................................14

*Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591 (7th Cir. 2008)....................21

*Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447 (1915) ...............................12

*Delano Farms Co. v. California Table Grape Com'n*,
   655 F.3d 1337 (Fed. Cir. 2011) ...........................................................2

*Farr v. United States*, 990 F.2d 451 (9th Cir. 1993) ...............................................21

*FDIC v. Meyer*, 510 U.S. 471 (1994) .......................................................8

*FDIC v. State Bank of Virden*, 893 F.2d 139 (7th Cir. 1990)................................12

*General Elec. Co. & Subsidiaries v. United States*,
   384 F.3d 1307 (Fed. Cir. 2004) ...........................................................10

*Ibrahim v. United States*,112 Fed. Cl. 333 (2013)....................................................13

*International Business Machines Corp. v. United States*,
   201 F.3d 1367 (Fed. Cir. 2000), ...........................................................16

*Jahn v. Regan*, 610 F.Supp. 1269 (E.D. Mich. 1985)......................................14, 15

*Lane v. Pena*, 518 U.S. 187 (1996)........................................................8

*Library of Congress v. Shaw*, 478 U.S. 310 (1986)..................................... 7, 8, 9, 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................2

*Marathon Oil Co. v. United States*, 374 F.3d 1123 (Fed. Cir. 2004) .......................9

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)...................................................8

*Nelson v. Regan*, 731 F.2d 105 (2d Cir. 1984) ................................................. 17, 18

*Oatman v. Dep't of Treasury-Internal Revenue Service*,
   34 F.3d 787 (9th Cir. 1994) ..................................................................... 15, 18, 19

*RadioShack Corp. v. United States*, 105 Fed. Cl. 617 (2012) ................................11

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ........................................................17

*Rucker v. Sec'y of Treasury*, 751 F.2d 351 (2d Cir. 1984) ......................................18

*Salmon Spawning and Recovery Alliance v. United States*,
   550 F.3d 1121 (Fed. Cir. 2008) ...........................................................................21

*Sebelius v. Cloer*, 133 S. Ct. 1886 (2013)...............................................................15

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 ..................................20

*Sorenson v. Sec'y of Treasury*, 752 F.2d 1433 (9th Cir. 1985)........................ 18, 19

*Steiner v. Nelson*, 309 F.2d 19 (7th Cir. 1962) .......................................................11

*Tucson Airport Authority v. General Dynamics Corp.*,
   136 F.3d 641 (9th Cir. 1998) .................................................................................9

*United States v. Hohri*, 482 U.S. 64 (1987) ..............................................................2

*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654 (1947) ...........................9

*Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033 (9th Cir. 2006)........21

# STATUTES

26 U.S.C. § 4081(e) ....................................................................................16

26 U.S.C. § 6402 ........................................................................................11

26 U.S.C. § 6402(d) ........................................................................ 4, 11, 13

26 U.S.C. § 6402(d)(1)(A) ...........................................................................12

26 U.S.C. § 6402(d)(1)(B) ...........................................................................12

26 U.S.C. § 6402(d)(1)(C) ...........................................................................12

26 U.S.C. § 6402(g) ........................... 6, 7, 12, 13, 14, 15, 16, 17, 18, 19

26 U.S.C. § 6611 ........................................................... 5, 10, 14, 22

26 U.S.C. § 6611(a) ........................... 2, 4, 5, 6, 7, 10, 11, 14, 16, 19

26 U.S.C. § 6611(e) ....................................................................................10

26 U.S.C. § 7422 .......................................................................... 14, 15, 18

26 U.S.C. § 7422(a) ............................................................... 5, 14, 18, 19

28 U.S.C. § 1295(a)(2) ..................................................................................1

28 U.S.C. § 1346(a)(2) ..................................................................................1

31 U.S.C. § 3325(a)(1) ................................................................................11

31 U.S.C. § 3720A ............................................................................... 4, 11

31 U.S.C. § 3720A(c) ..................................................................................12

# REGULATIONS

31 C.F.R. § 285.2 .......................................................................................11

31 C.F.R. § 285.5(e)(9) ............................................................................12

## RULES

Federal Rule of Civil Procedure 60(a) ............................................. 3, 6, 20

## MISCELLANEOUS

Black's Law Dictionary (6th ed. 1990) ...................................................15

Deficit Reduction Act of 1984, Pub. L. 98-369.......................................17

Joint Comm. on Taxation, 98th Congress, 2d session, *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (December 31, 1984) ................................................................................................17

Rev. Rul. 84-171, 1984-2 C.B. 310 ........................................................19

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule of Practice 47.5, the United States' counsel states that she is unaware of any other appeal in or from this action that was previously before this Court or any other appellate court under the same or similar title. The United States' counsel also states that she is unaware of any cases pending before this Court or another court which will directly affect or be directly affected by the Court's decision in this appeal.

**BRIEF FOR DEFENDANT-APPELLEE**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**2014-1286**

_____

KYLE RE,
on behalf of himself and all others similarly situated,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee.

_____

**<u>JURISDICTIONAL STATEMENT</u>**

The United States District Court for the Northern District of California had

subject-matter jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2),

over Kyle Re's claim against the Army and Air Force Exchange Service

(Exchange or AAFES) for a refund of finance charges the Exchange charged on his

delinquent uniform clothing debt.  On December 13, 2013, the district court

entered final judgment.  A001.[1]  Re timely filed a Notice of Appeal.  This Court's

jurisdiction arises under 28 U.S.C. § 1295(a)(2).

_____

[1] "A__" refers to a page in the Joint Appendix.  The United States objects to pages
A00124–00160 of the Joint Appendix because those documents are not in the
district court record of this case.

Re does not appeal the district court's dismissal of his claim for a refund of finance charges as abandoned, and, in any event, he lacks standing to do so. The Exchange paid Re a full refund for the finance charges before he filed his complaint, and thus he suffered no injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Re's lone claim on appeal is for an award of interest under 26 U.S.C. § 6611(a) on the refund he received from the Exchange. The district court lacked jurisdiction over Re's claim for interest on the refund because no waiver of sovereign immunity exists. *See Delano Farms Co. v. California Table Grape Com'n*, 655 F.3d 1337, 1343 (Fed. Cir. 2011) ("if Congress has not waived the federal government's immunity for a particular claim, courts lack jurisdiction over that claim and must dismiss it."). This Court has exclusive jurisdiction over this appeal because the district court's jurisdiction was founded on the Little Tucker Act. *See United States v. Hohri*, 482 U.S. 64, 75-76 (1987).

## STATEMENT OF THE ISSUES

1)    Did the district court correctly dismiss Re's claim for interest because he could identify no contract or statute authorizing an award of interest against the United States on a refund to Re of finance charges the Exchange mistakenly charged under the terms of its credit agreement with him?

2

2)    If the Court concludes that the district court erred by dismissing Re's claim for interest on the Exchange's refund of finance charges (which it should not), did Re waive his argument about the order of payments applied to debt because he raised it for the first time in a Federal Rule of Civil Procedure 60(a) post-judgment motion, and does not challenge the denial of that motion in his opening brief?

## STATEMENT OF THE CASE

### I.    Nature of the Case

Re appeals the district court's final judgment in *Re v. United States*, No. 13-cv-03518 WHA (N.D. Cal. Dec. 13, 2013).  A001.  The district court dismissed Re's claim for a refund of finance charges because he abandoned the claim, and no authority exists for payment of interest on the refund.  A002-008.

### II.    Statement of Facts and Course of Proceedings Below

The material facts are not disputed.  The Exchange is a non-appropriated fund instrumentality of the United States that operates post exchange stores on military bases, selling merchandise and uniform apparel.  A004.  During the relevant period, the Exchange offered a credit card to qualified customers for use in the Exchange's stores.  *Id.*

Re opened a credit account with the Exchange in 1998.  A003-004.  His credit agreement provided that no interest or finance charges would be imposed on

uniform clothing purchases. A004. The credit agreement also provided that "charge-off" delinquent accounts would be closed and transferred to "AAFES Collections," which in turn would collect the debt in accordance with 26 U.S.C. § 6402(d), 31 U.S.C. § 3720A, and other statutory provisions. A004; A006.

In 2006, Re failed to timely pay a debt of $96.01. A003-004. Consistent with the terms of the credit agreement and federal offset statutes, the Exchange collected the debt through the Department of Treasury's (Treasury) offset program (TOP) through an offset against an alleged tax refund owed Re. A004. Subsequently, the Exchange discovered that it had inadvertently charged finance charges in error on some delinquent debts and initiated a voluntary review of accounts. A004; A0045. The Exchange removed all finance charges from Re's account, resulting in a credit balance of $6.65. A004; A0045. On September 28, 2009, the Exchange disbursed to Re a refund check for $6.65 that was returned to the Exchange as undeliverable. A004; A0045; A0055-0057. On April 5, 2013, based on updated address information, the Exchange re-issued the refund check. A004; A0045; A0058-60. Re cashed the refund check on April 15, 2013, three and one-half months before he filed his complaint. A0059.

Re's complaint alleged a contract claim under the Little Tucker Act and sought a $6.65 refund for finance charges. A0015-0026. Re also claimed interest on the refund under 26 U.S.C. § 6611(a), alleging that, because he paid the

4

Exchange via an administrative offset of a tax refund, the refund of finance
charges he later received from the Exchange was actually a delayed payment of a
tax refund.[2] *Id.* Re did not purport to exhaust administrative procedures required
by 26 U.S.C. § 7422(a) to claim a tax refund. Re also did not allege that his credit
agreement with the Exchange provided for interest on a refund from the
Exchange, and it does not. A0015-0026.

The United States moved to dismiss Re's complaint. A0027-0061. The
United States asserted that Re lacked standing to bring a refund claim because he
received a full refund before he filed his complaint, A0043-0061, and he suffered
no cognizable injury that the court could redress. A0035-0038. The United States
further sought dismissal of the interest claim because no waiver of sovereign
immunity exists. A0038-0041.

Re conceded that he had cashed his refund check, months before filing his
complaint, and did not oppose the United States' motion on the standing issue.
A004-005; A0067; A0071; A0073; A0086-0089. But, Re argued that his 26
U.S.C. § 6611 claim for interest on the refund he received before filing the
complaint survived. *Id.*

---

[2] Contrary to Re's assertion, App. Br. at 12, the United States has not admitted that
the offset used to pay Re's debt to the Exchange was a tax refund or that it
necessarily constituted an "overpayment." Instead, for the limited purpose of
moving to dismiss Re's 26 U.S.C. § 6611(a) claim, the United States assumed the
truth of the allegations in the complaint. A0087.

5

The district court dismissed the entire complaint, A002-008, and entered judgment in favor of the United States.  A001.  It determined that Re abandoned his refund claim.  A005.  On the request for interest, the court held that "Section 6611(a) does not provide Re with the express waiver of sovereign immunity needed to recover pre-judgment interest," A008, and explained that 26 U.S.C. § 6402(g) bars Re from characterizing the Exchange's refund of finance charges as a refund of tax.  A006.  "Without a claim for tax overpayments, the order therefore holds that Re cannot recover pre-judgment interest thereon under Section 6611(a)."  *Id.*

 After judgment, Re filed a Federal Rule of Civil Procedure 60(a) motion to "correct" the district court's order, raising a new theory that his claim for a refund of finance charges was actually a claim for principal.  A0013.  The district court denied the motion.  A00121-00123.

## SUMMARY OF THE ARGUMENT

Re is not due interest on his $6.65 refund.  He does not allege that his credit agreement provides for interest, and it does not.  Thus, Re must identify a statute with a clear and explicit waiver of sovereign immunity for an award of interest against the United States.  No such provision exists.

Re's reliance on 26 U.S.C. § 6611(a), which requires that Treasury pay interest on a delayed tax refund, is unavailing.  Re had no claim for a tax refund.

The Exchange paid Re $6.65 because the credit agreement did not provide for finance charges, not because of any determination about his taxes. The Internal Revenue Service (IRS) timely satisfied any tax-refund obligation to Re by certifying a payment due Re. Treasury then offset that payment to satisfy Re's perceived debt to the Exchange, and Re received that tax refund payment in full through the offset. Also, the Internal Revenue Code (IRC) expressly provides that Re's underlying claim against the Exchange based on the administrative offset must not "be considered to be a suit for refund of tax." 26 U.S.C. § 6402(g). Accordingly, section 6611(a) does not apply.

If the Court affirms dismissal of the section 6611(a) claim, it need not reach Re's post-judgment theory regarding the order that payments are applied to debt. Re waived this argument by failing to raise it prior to judgment, and he does not challenge the district court's denial of his post-judgment motion.

## **ARGUMENT**

I.    No Authority Exists for an Award of Interest on Re's Refund from the Exchange.

The United States owes no interest to Re on the Exchange's $6.65 refund of mistaken finance charges. The United States is immune from an award of interest unless contract or statute provides a clear and explicit waiver. *Library of Congress v. Shaw*, 478 U.S. 310 (1986). Re identifies no such provision and none exists.

A.     The No-Interest Rule Bars an Award of Interest Against the United States Unless a Statute Explicitly Waives Sovereign Immunity.

The United States, as a sovereign, is immune from suit unless it has consented to be sued.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Consent can be given only through an express and unequivocal waiver of sovereign immunity by Congress; it cannot be implied.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  A waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." *Id.*  Similarly, any ambiguities in the scope of the waiver must be construed in favor of the sovereign. *Id.*

The longstanding "no-interest rule" directs that "interest cannot be awarded against the United States unless it has expressly waived its sovereign immunity." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 280 (1989); *see also Shaw*, 478 U.S. at 318.  "The no-interest rule provides an added gloss of strictness upon the[ ] usual rules" requiring strict construction of waivers of sovereign immunity.  *Shaw*, 478 U.S. at 318.  As the Supreme Court explained:

> [T]here can be no consent by implication or by use of ambiguous language.  Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms.  The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

8

*Id.* (internal quotation and citation omitted); *see also Marathon Oil Co. v. United States*, 374 F.3d 1123 (Fed. Cir. 2004) (congressional intent to allow the recovery of interest cannot be implied). Moreover, courts lack any power to consider equitable concerns when applying the no-interest rule. *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659-60 (1947). Re cites no statutory term that provides a waiver for interest on his refund and none exists.

   B.   Re's Credit Agreement with the Exchange Does Not Provide
        <u>for Interest on a Refund from the Exchange.</u>

Re's underlying refund claim against the Exchange was for mistaken finance charges based on his credit agreement with the Exchange. The credit agreement does not provide for interest on any refunds.

The credit agreement provides the "source of the rights" upon which Re based his underlying claim for a refund of finance charges. *See Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998). Re concedes that "this is a contract dispute," App. Br. at 1, and his complaint averred: "Plaintiff's causes of action arise under the AAFES Credit Agreement, which, by its terms, is governed by federal law." A0017; A0023-0026. Re sought damages for finance charges that the Exchange assessed on his credit balances contrary to the terms of the credit agreement, which he attached to his complaint. A0018. That credit agreement, however, makes no provision for interest on any refund.

C.   Section 6611(a)'s Requirement that the IRS Pay Interest on
     Delayed Tax Refunds Does Not Apply.

Lacking a statutory or contract-based claim for interest on the refund from

the Exchange, Re invents a theory that he is due such interest based on his method

of payment: administrative offset of a tax refund.  Re's claim is founded on

IRC § 6611(a), which provides:

> Rate. --Interest shall be allowed and paid upon any
> overpayment in respect of any internal revenue tax at the
> overpayment rate established under section 6621.

"[I]n order for section 6611 to require the payment of interest on 'any

overpayment,' there must be an overpayment to which interest attaches." *General*

*Elec. Co. & Subsidiaries v. United States*, 384 F.3d 1307, 1311 (Fed. Cir. 2004).

A tax refund that is delayed, such as when the IRS issues a refund more than 45

days after a tax return is filed, qualifies.  26 U.S.C. § 6611(e).

Section 6611(a) is irrelevant here, however, because the IRS timely issued a

tax refund to Re.  The tax refund was applied for his benefit to offset a debt that Re

was thought to owe.

### 1.   Re's Claim Is Not for a Refund of Tax.

Re seeks interest on a refund by the Exchange for misapplied finance

charges, not a tardy tax refund.  The IRS timely satisfied any tax-refund obligation

to Re via the offset program.  The IRS certified Re's 2007 tax refund for payment,

and Re's tax refund proceeds were credited to Re via administrative offset to satisfy his perceived debt.

The Exchange's refund of finance charges to Re did not involve a "determination with respect to tax liability." *Steiner v. Nelson*, 309 F.2d 19, 21 (7th Cir. 1962). Instead, as part of a voluntary review, the Exchange paid Re $6.65 because it determined that he was not required to pay finance charges on his delinquent debt due the Exchange under the credit agreement, not because of any determination about his taxes. *Id.* at 21; *see also RadioShack Corp. v. United States*, 105 Fed. Cl. 617, 626 (2012) (rejecting a claim for interest under section 6611(a) because plaintiff had not demonstrated an underlying claim for a tax overpayment).

Re complains that the Exchange caused an offset of his 2007 tax refund via TOP to pay his delinquent debt. A004. TOP is a centralized offset program, administered by Treasury's Bureau of the Fiscal Service (Fiscal Service), to collect delinquent nontax debts due federal agencies. *See* 26 U.S.C. § 6402; 31 U.S.C. § 3720A; 31 C.F.R. § 285.2. The Fiscal Service may reduce a person's income tax refund payment, as certified by the IRS, to satisfy nontax debts owed to other federal agencies, such as the Exchange. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; *see also* 31 U.S.C. § 3325(a)(1) (agency certifies payment on voucher). After the Fiscal Service deducts the amount of the debt due the agency, it then pays the

11

deducted amount to the agency.  26 U.S.C. § 6402(d)(1)(B); 31 U.S.C. § 3720A(c).

Payment via TOP satisfies the individual's delinquent federal debt.  *See* 26 U.S.C.

§ 6402(d)(1)(A), (C).

   As a result, the IRS timely satisfied any tax-refund obligation to Re when it

certified payment of a refund.  The offset of Re's tax refund constituted actual

payment on his delinquent account, extinguishing Re's debt with the Exchange.

*See Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (offset satisfies preexisting debt);

*Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 456 (1915) (defendant with

set-off rights would "plead payment"); *Amoco Production Co. v. Fry*, 118 F.3d

812, 818 (D.C. Cir. 1997) (offset actually discharges the debt); *FDIC v. State Bank

of Virden*, 893 F.2d 139, 142 (7th Cir. 1990) ("setoff has the same effect as

payment, extinguishing the debt"); *see also* 31 C.F.R. § 285.5(e)(9) ("When an

offset occurs, the debtor has received payment in full for the underlying obligation

represented by the payment.").

      2.     Section 6402(g) of Title 26 Precludes a
Claim for an Improper Administrative
Offset from Being Considered a Claim for a
<u>Tax Refund.</u>

Even more importantly, and as the district court held, 26 U.S.C. § 6402(g)

expressly states that a claim to recover an improper administrative offset is not a

claim for the refund of tax.  A006.

12

Re's credit agreement with the Exchange explained that delinquent accounts not deemed collectible would be transferred to AAFES Collections, which then "'collects debts in accordance with . . . *26 U.S.C. 6402(d)* and [31] USC 3720A and the Federal Claims Collections [A]ct of 1966'[.]" A006 (emphasis in district court order). Section 6402(g), which incorporates section 6402(d) by reference, governs the review of any reduction—or offset—of a tax refund to pay a delinquent debt due a federal agency. It provides:

> Review of reductions.--No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), (e), or (f). No such reduction shall be subject to review by the Secretary in an administrative proceeding. *No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax.* This subsection does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid. . . [.]

(Emphasis added.)

Thus, section 6402(g) makes clear that Re's suit against the Exchange for an erroneous offset is *not* a suit for the refund of tax. As the Court of Federal Claims has held, under section 6402(g), a taxpayer's claim against a federal agency for a nontax offset of a tax refund is "not a suit for a refund of [] taxes." *See Ibrahim v. United States*, 112 Fed. Cl. 333, 336 (2013). Because Re's underlying $6.65 claim was based on the terms of his credit agreement and cannot be considered a claim

13

for a tax refund under section 6402(g), he has no claim for a tax refund and section 6611 is irrelevant. *See Briggs v. United States*, 07-5760 WHA, 2009 WL 1176297, at \*7 (N.D. Cal. April 30, 2009).

Tellingly, Re cites no precedent for awarding section 6611(a) interest on the refund of an amount collected through a federal, nontax, administrative offset. *Jahn v. Regan*, 610 F.Supp. 1269 (E.D. Mich. 1985), which Re cites, App. Br. at 17, is inapposite. There, a husband and wife sued Treasury claiming that a tax refund on their joint tax return could not be offset to satisfy a valid state child support debt associated with only the husband, and that the government's procedures violated due process. 610 F.Supp. at 1270-71. The court held that it lacked jurisdiction over the non-obligated, injured spouse's claim for a tax refund because she failed to comply with administrative procedures required by 26 U.S.C. § 7422. 610 F.Supp. at 1274 ("plaintiff's claim for refund must be dismissed for her failure to comply with § 7422(a)."). [3]

The *Jahn* court did not award section 6611(a) interest to the non-obligated spouse, or even consider a claim for interest. Instead, as part of its analysis rejecting a due process claim, the court, in *dicta*, simply noted that the IRS has an

_____

[3] 26 U.S.C. § 7422(a) provides: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [IRS]."

14

incentive to timely pay tax refunds because it must pay statutory interest if it is tardy.  610 F.Supp. at 1280.  Thus, *Jahn* provides Re with no support.  Re is not a non-obligated spouse, this case does not involve a past due child support payment to a state, and Re did not purport to timely file an administrative claim for a tax refund.  In any event, as described further below, an injured spouse's claim for an apportionment of a joint refund that has been offset to satisfy a spouse's child support obligations is not subject to section 6402(g).  *See Oatman v. Dep't of Treasury-Internal Revenue Service*, 34 F.3d 787 (9th Cir. 1994).

Additionally, contrary to Re's assertions, nothing in section 6402(g) limits its terms to the administrative requirements found in 26 U.S.C. § 7422 for seeking a tax refund.  App. Br. at 10.  The district court properly rejected this contention, holding: "Section 6402(g) still prevents Re's claim from being considered a claim for tax overpayments in the first place[.]"  A007.

Use of the the term "considered" in section 6402(g) broadly precludes a court from deeming a claim for an improper offset as one for a tax refund.  In any statutory construction case, the court starts with the statutory text, and "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (internal citations and quotations omitted).  "Considered" means "[d]eemed; determined; adjudged; reasonably regarded."  Black's Law Dictionary (6th ed. 1990).  Section

6402(g) broadly instructs that a claim for the return of an improper administrative offset shall not be deemed or judged to be one for a tax refund. Instead, section 6402(g) specifies that challenges to an improper administrative offset must be brought against the agency to which the reduction is paid. Here, Re filed a contract-based action against the Exchange, which cannot "be considered to be a suit for a refund of tax."

Re is incorrect when he argues that, despite the plain language of section 6402(g), section 6611(a) interest is nevertheless due because some other, unrelated statutes provide for tax refunds "without interest." App. Br. at 7.[4] Re cites no law altering the long-standing no-interest rule. "[W]aivers of sovereign immunity to suit must be read against the backdrop of the no-interest rule." *Shaw*, 478 U.S. at 314. If Congress wanted to provide for an award of interest on a refund of an erroneous administrative offset, it was required to explicitly state that interest was allowable. It did not. *Cf. International Business Machines Corp. v. United States*, 201 F.3d 1367, 1373 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1183 (2001) (no authorization for section 6611(a) interest on Harbor Maintenance Tax refunds

---

[4] Re cites, for example, 26 U.S.C. § 4081(e), governing fuel taxes, which provides that if a person establishes that a prior tax was paid on the taxable fuel, then an amount equal to the tax paid by that person "shall be allowed as a refund (without interest) to such person in the same manner as if it were an overpayment of tax imposed by this section." App. Br. at 7. This statute has no relevance to the interpretation of section 6402(g), but in any event, specifically states, unlike section 6402(g), that the refund is treated as an overpayment of tax.

because statute specified that they are not to be "treated as a tax").

Because section 6402(g) is clear and unambiguous, this Court should not consider the history leading to its enactment.  *See Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.").  But even if it does, Re's analysis of section 6402(g)'s history falls flat.  As part of the Deficit Reduction Act of 1984, Pub. L. 98-369, Congress required Treasury to offset tax refunds to collect nontax debts due to federal agencies.  But section 6402(g), and its predecessor statute, manifest Congress's plain intent that a claim for payment of an amount that has been offset is not a claim for a tax refund.  Joint Comm. on Taxation, 98th Congress, 2d session, *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (December 31, 1984)*, at 1221 (the Act provided "that no action brought against the United States to recover the amount of the offset shall be considered to be a suit for refund of tax.").

To the extent Re asserts that Congress may have enacted what became section 6402(g) in response to a circuit split in injured spouse cases on whether a plaintiff is required to exhaust administrative remedies before challenging offsets, App. Br. at 15-17, Re's theory is undermined by a flawed timeline.  When Congress enacted the Deficit Reduction Act, only one of the cases Re cites, *Nelson v. Regan*, 731 F.2d 105 (2d Cir. 1984), had been decided.  *Sorenson v. Sec'y of*

*Treasury*, 752 F.2d 1433 (9th Cir. 1985), and *Rucker v. Sec'y of Treasury*, 751

F.2d 351 (2d Cir. 1984), were both decided months later. As a result, no circuit

split existed. Moreover, Re cites no authority that Congress was even aware of

*Nelson*.

Furthermore, Re misconstrues the holding in *Nelson* and *Sorenson* regarding

injured spouse claims for tax refunds. App. Br. at 15-17. In *Nelson*, four

taxpayers whose tax refunds were offset to pay delinquent child support claimed,

*inter alia*, that the offset program violated due process. 731 F.2d at 108. The

Second Circuit held that a taxpayer's claim for a refund of an improper

administrative offset did not require exhaustion of administrative procedures under

26 U.S.C. § 7422(a). 731 F.2d at 109. *Nelson*'s holding did not extend to injured

spouses, however. App. Br. at 15-16. In *Nelson*, the United States conceded that if

an injured spouse timely filed a refund claim with the IRS, the IRS would compute

the overpayment due the injured spouse and refund that portion. 731 F.2d at 108.

In *Sorenson*, an injured spouse conceded that her action constituted a tax

refund suit, and the Ninth Circuit held that an injured spouse seeking a tax refund

offset for delinquent child support must comply with the administrative

requirements of 26 U.S.C. § 7422. 752 F.2d at 1438-39. *Sorenson* remains good

law in the Ninth Circuit, even after the enactment of what would become section

6402(g). In *Oatman*, the Ninth Circuit affirmed that an injured, non-obligated

18

spouse must exhaust administrative procedures under 26 U.S.C. §7422(a) to claim

his or her portion of a tax refund that was offset for delinquent child support.  34

F.3d at 789.  The Ninth Circuit examined the predecessor to section 6402(g), and

concluded that its enactment did not supersede its holding in *Sorenson*.  *Id.* at 788

n.3.  *Sorenson* and *Oatman* involved specific statutes—not at issue here—for non-

obligated spouses when a state offsets delinquent child support from a joint tax

refund.[5]  They do not support Re's flawed interpretation of section 6402(g).

In sum, section 6402(g) prevents a taxpayer's claim for payment of an

amount credited through administrative offset to another debt from being deemed a

claim for a tax refund.  Therefore, section 6611(a) cannot apply, and the Court

should affirm dismissal of Re's interest claim.

II.     Even if the Court Determines that Re Has a Claim for Interest
        (Which He Does Not), This Court Should Not Reach Re's Post-
        Judgment Theory Regarding Order of Payments Applied to Debt
        Because Re Waived It.

If the Court affirms dismissal of Re's claim for interest on the Exchange's

refund of finance charges, it need not reach Re's post-judgment theory about the

order in which he now says he applied the Exchange's payment to him.  App. Br.

at 18-20.  Re waived the argument by failing to preserve it prior to judgment and

---

[5]  *Accord* Rev. Rul. 84-171, 1984-2 C.B. 310 (if a non-obligated spouse in a past-due child support offset case timely submits a tax refund claim to the IRS, the IRS will issue a refund and, if necessary, pay section 6611(a) interest, except when offset error is made by state agency).

not meeting the requirements for consideration of the argument on appeal.

After the district court dismissed his complaint, Re moved under Federal Rule of Civil Procedure 60(a), theoretically seeking "correction" of the judgment. In the motion, Re belatedly asserted that his claim for overpaid finance charges against the Exchange was really for "principal," and the refund the Exchange had paid him should be applied to any interest due him before being applied to principal. App. Br. at 18. The district court denied Re's post-judgment motion, holding that Re sought substantive changes to the district court's order, which is not permissible under Rule 60(a). A00121-00123.

Re has waived an appeal of his argument regarding the order in which payments are applied to debt. In his opening brief, Re did not challenge the district court's denial of his Rule 60(a) motion.[6] *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 ("Our law is well established that arguments not raised in the opening brief are waived."). In any event, the district court did not abuse its discretion by rejecting Re's Rule 60(a) motion. *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987). Re also failed to preserve this argument because he did not raise it prior to judgment, in the face of a motion to dismiss his finance

---

[6] Additionally, Re did not raise his new "order of payments" theory as an "issue" in the first version of the brief filed with the Court. Fed. Cir. Dkt. No. 16. Contrary to an order from the Clerk's office barring non-specified changes to a corrected brief, Fed. Cir. Dkt. No. 17, Re added a second issue. App. Br. at 1.

charge refund claim. *See* A005; A00123; *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who . . . fails to raise the issue in response to a defendant's motion to dismiss. . . has effectively abandoned his claim, and cannot raise it on appeal").[7]

If the Court concludes that Re did not waive this "order of payments" theory (which it should not), the Court should remand to the district court for consideration in the first instance because it had no opportunity prior to judgment to consider this issue. *See Salmon Spawning and Recovery Alliance v. United States*, 550 F.3d 1121, 1134 (Fed. Cir. 2008).[8]

## CONCLUSION

This Court should affirm the district court's dismissal of Re's claim for interest under 26 U.S.C. § 6611.

---

[7]  And, in any event, the district court properly concluded the Re abandoned his finance charge refund claim. A005. Additionally, the undisputed evidence demonstrated that Re lacked standing his refund claim because the Exchange paid him a refund before he filed suit. A0044 (Re "got back the $6.65 finance charge"); A0043-0061; *see Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993) (a court may consider facts outside the pleadings as necessary to determine jurisdiction).

[8]  In any event, the common law rule applying payments to interest before principal is inapposite because it only applies "in the absence of a clearly expressed intention by the parties to allocate payments in some other way[.]" *See Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 604 (7th Cir. 2008). The Exchange's cover letters to Re plainly explained that his refund from the Exchange constituted *overcharged uniform clothing finance charges*. A0043-46; A0055-56; A0058. Re cashed the refund check, and his theory that the refund constituted something other than overcharged finance charges fails.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

J. CHRISTOPHER KOHN
Director

RUTH A. HARVEY
Assistant Director

/s/ Alicia M. Hunt

ALICIA M. HUNT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Room 10018
1100 L Street, N.W.
Washington, D.C. 20005
(202) 307-3548

May 22, 2014                    Attorneys for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

   According to the word-count calculated by the word processing system with which the brief was prepared, the brief contains 5,270 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   The brief has been prepared in a proportionally spaced typeface using *Word 2010* in *Times New Roman, 14 point.*

/s/ Alicia M. Hunt

Alicia M. Hunt
Attorney for Defendant-Appellee

Dated:  May 22, 2014

23

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 22nd day of May, 2014,

I served the foregoing Defendant-Appellee's brief via Electronic Case Filing to:

S. Chandler Visher
Law Offices of S. Chandler Visher
44 Montgomery Street
Suite 3830
San Francisco, CA 94104

/s/ Alicia M. Hunt

Alicia M. Hunt
Attorney for Defendant-Appellee